## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| WINSTON N.-P. | Case No. 26-cv-3368 (LMP/JFD) |
| Petitioner, | |
| v. | **ORDER GRANTING** |
| | **HABEAS PETITION** |
| TODD BLANCHE, *Acting Attorney General*; MARKWAYNE MULLIN, *Secretary of the Department of Homeland Security*; DAVID J. VENTURELLA, *Acting Director of United States Immigration and Customs Enforcement*; DAVID EASTERWOOD, *Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*; and RYAN SHEA, *Sheriff of Freeborn County.* | |
| Respondents. | |

Charles E. Nelson, **Ballard Spahr, Minneapolis, MN**, for Petitioner.

Pedro del Valle, IV, **United States Attorney's Office, Minneapolis, MN**, for Respondents

Petitioner Winston N.-P.[1] brings a petition for a writ of habeas corpus, challenging the legality of his arrest and detention. For the following reasons, the petition is granted, and the Court orders Winston's release from detention.

---

[1] The Court uses the petitioner's first name throughout this order to comport with this District's practice of using only the first name and last initial of any nongovernmental parties in immigration cases. No disrespect is intended in doing so.

## BACKGROUND

Winston is a native and citizen of Mexico who has lived in the United States since 2021. ECF No. 1 ¶ 47; ECF No. 8 ¶ 4. He resides in St. Paul with his partner and her children, and he works as a roofer. ECF No. 1 ¶ 48. Winston has remained law abiding since arriving in the United States. ECF No. 8-1 at 3.

On June 3, 2026, Winston was finishing a day of roofing work in Red Wing, Minnesota. ECF No. 1 ¶ 8. He and a coworker began to drive back to St. Paul when they were encountered on the side of the road by officers with Immigration and Customs Enforcement ("ICE"). *Id.*; ECF No. 8-1 at 2.[2] Once approached, Winston provided the officers with a Minnesota driver's instruction permit that had been issued on June 25, 2025, and is valid through June 25, 2027. ECF No. 8 ¶ 8. The license listed Winston's St. Paul address, and one of the officers asked Winston whether the listed address was accurate, to which Winston replied affirmatively. *Id.* Winston also informed the officers that he had no lawful basis to be in the United States, and ICE records confirmed that status. *Id.* ¶¶ 7–8.

After confirming that there was no evidence of lawful immigration status, ICE officers took Winston into custody. ECF No. 8-1 at 3. Later that same day, ICE served Winston with an I-200 administrative arrest warrant, ECF No. 8-3, and a Notice to Appear

---

[2] The parties disagree about the events that occurred before the ICE officers came into contact with Winston. *Compare* ECF No. 1 ¶¶ 51–57 *and* ECF No. 9 at 2–10, *with* ECF No. 7 at 2–4. But neither side requested an evidentiary hearing at which the Court could resolve the factual disputes. *See* ECF No. 7 at 27. Nevertheless, most of those disagreements prove irrelevant to the Court's conclusion below. As a result, the Court recites here only those facts necessary to the Court's conclusion.

2

in removal proceedings, ECF No. 6-2.  Winston remains detained at the Freeborn County

Jail in Albert Lea, Minnesota.  ECF No. 1 ¶ 61.

On July 21, 2026, Winston filed the instant habeas petition.  ECF No. 1.  Winston

first argues that Respondents (the "Government") did not provide him with a bond

redetermination hearing in violation of his due process rights.[3]  ECF No. 1 ¶¶ 64–81.

Winston also claims that he is entitled to immediate release because ICE officers violated

federal law regarding warrantless immigration arrests.  *Id.* ¶¶ 82–91.

The Court ordered the Government to respond to the petition no later than July 29,

2026, with any reply from Winston due by August 3, 2026.  ECF No. 5.  Both the

Government and Winston timely provided that briefing.  ECF Nos. 7, 9.

## ANALYSIS

"Congress has granted federal district courts, 'within their respective jurisdictions,'

the authority to hear applications for habeas corpus by any person who claims to be held

'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul*

*v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)).  The protections

of habeas corpus extend to those in immigration detention.  *See INS v. St. Cyr*, 533 U.S.

289, 305–06 (2001).

---

[3]    Winston also contests that he is subject to mandatory detention as a statutory matter. ECF No. 1 ¶¶ 92–95.  Winston recognizes, however, that the Eighth Circuit foreclosed this argument in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), so he includes that claim only for issue-preservation purposes.  ECF No. 1 ¶ 93.

3

Winston asserts that he is entitled to immediate release because ICE officers violated federal law regarding warrantless immigration arrests. ECF No. 1 ¶ 91. "As a general rule, it is not a crime for a removable alien to remain present in the United States," so police may not arrest "someone based on nothing more than possible removability." *Arizona v. United States*, 567 U.S. 387, 407 (2012). Instead, the "federal statutory structure instructs when it is appropriate to arrest an alien during the removal process." *Id.* Relevant here, 8 U.S.C. § 1226(a) allows the Attorney General to "exercise discretion to issue a warrant for an alien's arrest and detention." *Id.* But if "no federal warrant has been issued, [ICE] officers have more limited authority," *id.*, and ICE may arrest a noncitizen only when an officer has "reason to believe" (1) that a noncitizen is in violation of the immigration laws; and (2) "is likely to escape before a warrant can be obtained for his arrest."[4] 8 U.S.C. § 1357(a)(2). The language "reason to believe" in 8 U.S.C. § 1357(a)(2) "means constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

Winston argues that ICE officers had no basis to conclude that he was likely to escape before a warrant could be obtained. ECF No. 9 at 15. The Court agrees. "Likely to escape" under 8 U.S.C. § 1357(a)(2) means "'likely to evade detention by immigration

---

[4]    Although immigration officers do not need to issue a warrant to detain a noncitizen under 8 U.S.C. § 1225(b)(2)(A), warrantless arrests of individuals ultimately detained under 8 U.S.C. § 1225(b)(2)(A) must still comply with the requirements of 8 U.S.C. § 1357(a)(2). *See Muse v. Mullin*, No. 26-cv-4024-CJW-MAR, 2026 WL 1008532, at *2–3 (N.D. Iowa Apr. 14, 2026); *Francisco M. A. v. Blanche*, No. 26-cv-2032 (JRT/EMB), 2026 WL 1229701, at *2 (D. Minn. May 5, 2026). The Government does not contend otherwise.

officers.'"  *Walther Ademir A. S. v. Blanche*, No. 26-cv-2804 (LMP/SGE), 2026 WL 1734906, at *3 (D. Minn. June 16, 2026) (quoting *Hussen v. Noem*, 822 F. Supp. 3d 944, 988 (D. Minn. 2026)).  And that inquiry "considers not just whether the noncitizen will be located at the scene of encounter with immigration enforcement but also whether immigration enforcement would be able to arrest the noncitizen at 'another clearly identifiable location.'"  *Id.* (quoting *Escobar Molina v. U.S. Dep't of Homeland Sec.*, Civil Action No. 25-3417 (BAH), 2026 WL 1256234, at *10 (D.D.C. May 7, 2026)). Accordingly, the relevant inquiry is not simply whether Winston was likely to leave the scene of the encounter before ICE officers could obtain a warrant but whether it was likely that ICE officers would be able to locate Winston after obtaining a warrant.  *Id.*

Here, in accordance with the officer's requests, Winston provided a valid Minnesota identification card that listed a St. Paul address, and Winston confirmed that the address was accurate.  As such, "ICE agents plainly could have located [Winston] at a clearly identifiable location: his home address."  *Jorge Anibal P. P. v. Blanche*, No. 26-cv-3125 (LMP/LIB), 2026 WL 2017765, at *4 (D. Minn. July 13, 2026).  The Government first argues that even though Winston provided his home address and an identification card confirming that address, the officers were "unable to obtain additional sufficient information to independently verify the stability of that residence."  ECF No. 7 at 24.  But this amounts to nothing more than a disregard of the evidence that the officer had before him in favor of a generalized suspicion that Winston *might* not actually live at that provided address.  That is not enough, for probable cause requires possessing a "reasonable ground for belief."  *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citation omitted).  Here, the

5

Government points to no reasonable grounds demonstrating that the address that Winston provided to the officer—the address that matched Winston's state-issued identification card—was inaccurate.

Notable, too, is that the officer did not even attempt to satisfy his purported uncertainly[5] by asking any follow-up questions. Courts have made the "self-evident finding that the likelihood of escape is lower when the individual has resided in the country for a lengthy period of time and has strong community ties." *Escobar Molina*, 811 F. Supp. 3d at 31 (collecting cases involving noncitizens with jobs, property, and families in the United States). Here, Winston lives in St. Paul with his partner and her children, worked as a roofer, and has no criminal history. ECF No. 1 ¶¶ 47–48; ECF No. 8-1 at 3. But "officers at the scene knew none of this because they did not ask." *Jorge Anibal P. P.*, 2026 WL 2017765, at *4. The fact that officers "'asked no questions—until after [Winston's] arrest[]—bearing on flight risk, including about [Winston']s famil[y], employment, or other community ties" undermines the Government's claim that the ICE

---

[5] The "evidence" for the Government's assertion comes from the declaration of a deportation officer who was not present during the encounter. *See generally* ECF No. 8. The deportation officer provides all of the information relevant to flight risk. But, notably, the officer who made the warrantless arrest made no mention of whether he believed the address Winston provided was inaccurate, nor any mention that he personally concluded that Winston was "likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). Instead, the arresting officer appeared to believe that Winston's unlawful status, by itself, justified Winston's arrest. *See* ECF No. 8-1 at 3 ("Based on the establishment of probable cause that all subjects were in violation of U.S. immigration law . . . all occupants were taken into custody."). The deportation officer's attempt to fill in the missing second element of 8 U.S.C. § 1357(a)(2) appears to be based on nothing more than the deportation officer's post-hoc impressions of the record. But, even crediting the deportation officer's assertions, the Government fails to show probable cause.

officers on the scene had "reason to believe that [Winston] would evade detention before a warrant could be issued." *Id.* (quoting *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1231 (D. Colo. 2025)).  Indeed, it is ICE's burden to make a "particularized assessment" into whether the noncitizen is likely to evade detention.  *Orellana v. Nobles County*, 230 F. Supp. 3d 934, 946 (D. Minn. 2017).

Second, the Government asserts that the officer worried that Winston would not be located later because Winston "had access to a vehicle, possessed a state-issued instruction permit, and was encountered in a remote location approximately 51 miles from his reported residence."  ECF No. 8 ¶¶ 9–10.  As a result, says the Government, the "officer was uncertain as to whether [Winston] could be reliably located later for service of a warrant."  ECF No. 7 at 24.  But, again, "uncertainty" is not probable cause.  *See Pringle*, 540 U.S. at 371 (citation omitted) (holding probable cause must be based upon a "reasonable ground for belief" that is "particularized with respect to the person"); *see also Illinois v. Gates*, 462 U.S. 213, 239 (1983) (explaining that a warrant affidavit must provide "a substantial basis for determining the existence of probable cause").  The Government's fear that Winston had access to a car and the fact that he was near Red Wing, not St. Paul, at the time of his arrest does not provide a "reasonable ground" to believe that he was likely to evade detention.[6] *Pringle*, 540 U.S. at 371.  To the contrary, it suggests nothing more than

---

[6]    The facts of this case contrast sharply with the Eighth Circuit's decision in *Quintana*.  There, the court found a likelihood of escape when a noncitizen was stopped while speeding in a car registered in a distant state, told an officer he was heading back to that distant state, provided false information to the arresting officer, and was suspected of drug trafficking.  *See Quintana*, 623 F.3d at 1238, 1241.

the Government's belief that anytime it encounters a noncitizen in a car away from home, probable cause is satisfied. That is not the law. *See Walther Ademir A. S.*, 2026 WL 1734906 at \*4 (holding that "a person does not immediately present a likelihood of escape merely by being a noncitizen").

The Government alternatively suggests that even if the officer made an unlawful warrantless arrest, the proper remedy is not release. ECF No. 7 at 26. But this Court and many others have disagreed. *See Walther Ademir A. S.*, 2026 WL 1734906, at \*4 (collecting cases). As a result, because the Government did not have probable cause to conclude that Winston was "likely to escape" when they arrested him without a warrant, the Court orders the Government to release Winston.[7]

### CONCLUSION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Winston's Petition for a Writ of Habeas Corpus (ECF No. 1) is **GRANTED**;

2. The Government is **ORDERED** to release Winston from custody and with all personal property by no later than 5:00 p.m. on August 7, 2026;

3. The Government is **ORDERED** to file a status report certifying its compliance with this Order by no later than 5 p.m. on August 10, 2026; and

---

[7] Because the Court grants Winston release from custody on statutory grounds, the Court need not address Winston's constitutional arguments in support of a bond hearing.

4.      If the Government seeks to retain Winston's property, the Government's status report must include: (a) the property retained; and (b) the legal basis on which the property is retained.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 6, 2026

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge